UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

MARKEL AMERICAN INSURANCE
COMPANY,

              Petitioner,

-vs-                                  Case No.    5:11-cv-588-Oc-10PRL

MARK FLUGGA, ROBERT FLUGGA,
and TINA BAKER,

              Respondents.

_____/

## **MEMORANDUM OPINION**

This is an action for a declaratory judgment brought by Markel American Insurance Company pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. The suit involves what has come to be known in Florida as a <u>Cunningham</u> agreement. <u>Cunningham v. Standard Guaranty Insurance Company</u>, 630 So. 2d 179 (Fla. 1994).

The parties have filed cross motions for summary judgment (Docs. 11 and 60) that have been fully briefed (Docs. 17-18, 28, 72, 85) and the Court heard argument at the pretrial conference. After thorough review of the record and the arguments of the parties, the Court has determined that ruling will be reserved on both of the competing motions for summary judgment while the parties will be given an opportunity to show cause why the Court, acting <u>sua</u> <u>sponte</u>, should not exercise its discretion to dismiss this action in deference to the state court and to permit the parties to seek resolution there of an issue raised here by the Defendants concerning

the scope and meaning of the parties' state court-approved <u>Cunningham</u> agreement.

A detailed explanation is in order.

## I.   Background

Under Florida law, when an insurance company acts in bad faith toward its insured in the settlement (or attempted settlement) of a claim brought against the insured, and the insured then suffers the entry of an adverse judgment for an amount in excess of the coverage afforded by the insurance policy, the insured has a judicially created "bad faith" cause of action against the insurance carrier for the excess amount of the award.  <u>See</u> <u>Perera v. United States Fidelity and Guar. Co.</u>, 35 So. 3d 893, 898-902 (Fla. 2010) (collecting and discussing authorities).

Prior to 1994, Florida courts had held that a bad faith claim – including declaratory judgment suits concerning the issue of bad faith – could not be maintained until judgment had in fact been entered against the insured for an amount in excess of the policy limits.  Until then, the courts said, there was no jurisdiction to entertain or resolve the issue of bad faith because the claim had not matured – the insured had not been damaged and there was no existing case or controversy.  <u>Dixie Insurance Co. v. Gaffney</u>, 582 So. 2d 64 (Fla. Dist. Ct. App. 1991); <u>State Farm Mut. Auto Ins. Co. v. Marshall</u>, 618 So. 2d 1377 (Fla. Dist. Ct. App. 1993).  This meant that the parties in such cases had to go through the trouble and expense of trying the underlying negligence case in which the injured claimant would attempt to secure an excess judgment that might or might not be collectible, and might or might not damage the insured, depending upon the outcome of a sequential action for bad faith.

In <u>Cunningham</u>, an auto accident negligence case, the parties attempted to finesse this procedural difficulty involving a bad faith claim by entering into a stipulation to stay the negligence action against the insured; to first try the bad faith claim against the insurance company; and, if no bad faith was found, the injured claimants were contractually committed to settle for the policy limits.[1]   In that circumstance the insured would not be exposed to an excess judgment.  If the bad faith claim was decided against the insurance company, the parties agreed that the issue of damages would be tried later.[2]   The state trial court accepted the stipulation and tried the bad faith claim resulting in a jury verdict finding bad faith on the part of the insurance company.  A declaratory judgment was then entered to that effect.  On appeal, Florida's First District Court of Appeal vacated the judgment on the established ground that there was no justiciable case or controversy involving the bad faith issue unless and until an excess judgment was entered against the insured.  The court further held that the parties could not cure the jurisdictional defect by simply stipulating that it did not exist.  <u>Standard Guar. Ins. Co. v. Cunningham</u>, 610 So. 2d 458 (Fla. Dist. Ct. App. 1992), quashed by <u>Cunningham v. Standard Guar. Ins. Co.</u>,

---

[1]     Many of the bad faith insurance cases litigated in Florida seem to involve, as in this case, auto insurance policies providing minimum coverages of $10,000 per person, $20,000 per accident.  (<u>See</u> Doc. 4-1).

[2]     As <u>Cunningham</u> agreements have evolved, many effect a settlement of the damages as well so that nothing is left for trial except the bad faith claim.  So it is in this case.  The <u>Cunningham</u> agreement in this instance provides that if the bad faith issue is resolved against Markel American, judgment for Baker will be entered in the amount of $400,000.00 plus fees and costs.

630 So. 2d 179 (Fla. 1994).  The court later denied rehearing but certified the issue to the Supreme Court of Florida as a question of great public importance.

The Supreme Court of Florida accepted <u>Cunningham</u> for review and held that the stipulation of the parties was the "functional equivalent" of an excess judgment. <u>Cunningham v. Standard Guar. Ins. Co.</u>, 630 So. 2d 179, 182 (Fla. 1994).  The Supreme Court further held that the trial court had jurisdiction to proceed as it did in trying the bad faith issue before the trial of the negligence action.  <u>Id.</u>  Thus began a stream of lawsuits down through the years involving so-called <u>Cunningham</u> agreements.  This is one of those cases.

## II.    The Facts

Effective January 4, 2010, Markel American issued a Motorcycle Insurance Policy insuring Mark and Robert Flugga who were listed on the policy as residents of Umatilla, Lake County, Florida.  The coverages afforded by the policy for bodily injury (including passenger liability) were $10,000 per person and $20,000 per accident.

On Saturday afternoon, April 10, 2010, within the coverage period of the Markel American insurance policy, Mark Flugga was operating the insured motorcycle owned by him and his brother Robert Flugga.  While riding on County Road 44 in or near Leesburg, Lake County, Florida, with Tina Baker as his passenger, Mark Flugga collided with a passenger car being operated by Laurene Ferrel with Geraldine Clark as her passenger.

The details of the accident do not matter.  It is now undisputed that Mark Flugga was at fault and that his negligence was a cause of the collision.  It is also presently

4

undisputed that the riders on the motorcycle, Mark Flugga and his passenger Tina Baker, were both seriously injured.  The occupants of the car, Laurene Ferrel and Geraldine Clark were both injured as well, but not as severely as the motorcycle riders.[3]

On April 14, 2010, Markel American was notified of the accident by way of a telephone call from Mark Flugga's sister.  A written record was made of the communication (Doc. 56-2) which included a statement that Tina Baker had sustained a broken pelvis and had been transported to the hospital.  (Id.).

On April 26, 2010, attorney Tim Babiarz sent a letter to Markel American advising that he represented Tina Baker and requesting information required to be disclosed under state law concerning the existing insurance coverage.  A copy of the Markel American policy issued to the Fluggas was sent to Mr. Babiarz the next day.

On June 9, 2010, Markel American's claims examiner telephoned the office of Baker's counsel, Mr. Babiarz, spoke to an employee there, and requested "some type of documentation" relating to Baker's injuries.  That request was then repeated in a letter written by Markel American to Baker's counsel dated the same day – June 9, 2010.  One month later, on July 9, 2010, Baker's counsel wrote to Markel American saying that there was a publicly recorded hospital lien pertaining to Ms. Baker that exceeded $72,000.00.  The letter also announced that suit had been filed in state

---

[3]     Markel American settled the claims of Ferrel and Clark in August, 2010, for an aggregate amount of $10,000.00 or less, thereby preserving (under the policy limits) $10,000.00 for the Baker claim.

court, Lake County, Florida, in behalf of Ms. Baker against the Fluggas.  (The action was filed on July 7, 2010.)

Additional communications ensued over the next month concerning the hospital lien – and the way to find it online – and on August 19, 2010, after finding a copy of the lien on the internet, Markel American tendered its check to Ms. Baker and her counsel in the amount of $10,000.  The check was later returned, uncashed, on September 30, 2010.

No demand for (or offer of) settlement was ever made by or on behalf of Tina Baker prior to the filing of her negligence action in state court.[4]

It appears that, over the following year, into October, 2011, the parties expended their energy litigating the state court negligence action.  Then, on the eve of a scheduled trial of that case, two things occurred.  First, on October 24, 2011, Markel American filed this action in this court for declaratory judgment (Doc. 1) followed by the filing of an Amended Petition (Doc. 3) on October 31, 2011.  Second, the parties entered into a Cunningham agreement that was approved by the state court on October 31, 2011.

---

[4]      The foregoing recitation of the facts has been limited to the undisputed communications exchanged by the parties leading up to the litigation in state court.  There were other exchanges (including dealings between Markel American and the injured occupants of the automobile) that are disputed as to content, significance or effect.  There are, in other words, as discussed infra, disputed issues of material fact concerning Markel American's motion for summary judgment.

### III.   The Motions For Summary Judgment

A.   <u>The Motion of Markel American</u>.   At one time there was decisional authority in Florida for the proposition that, in the absence of a demand or offer of settlement by the injured party, an insurance company could not be held liable for alleged bad faith in delaying its offer of settlement.  See <u>Chastain v. Federal Ins. Co.</u>, 338 So. 2d 214 (Fla. Dist. Ct. App. 1976) and <u>Beck v. Kelly</u>, 323 So.2d 667 (Fla. App. 3d Dist. 1975), both receded from in <u>General Acc. Fire & Life Assur. Corp., Ltd. v. American Cas. Co. of Reading, Pa.</u> 390 So. 2d 761 (Fla. Dist. Ct. App. 1980).  More recent decisions establish the rule that the lack of a demand or offer of settlement by the injured party is merely one of the factors to be considered in deciding, on the basis of the totality of the circumstances, whether the insurer acted in bad faith.  <u>E.g.</u>, <u>Powell v. Presidential Property & Cas. Ins. Co.</u>, 584 So. 2d 12 (Fla. Dist. Ct. App. 1991); <u>Shin Crest PTE, Ltd. v. AIU Ins. Co.</u>, 605 F. Supp. 2d 1234 (M.D. Fla. 2009); <u>Snowden ex rel. Estate of Snowden v. Lumbermens Mutual Cas. Co.</u>, 358 F. Supp. 2d 1125 (N.D. Fla. 2003).  Indeed, where liability is clear and the known injuries are so serious that a judgment in excess of the policy limits is likely, the insurer's duty of good faith includes an affirmative obligation to initiate settlement discussions.  <u>Powell</u>, 584 So.2d at 14; <u>Snowden</u>, 338 F. Supp. at 1129.

Here, the principal argument advanced in support of Markel American's motion for summary judgment is that, in the absence of a demand or offer from Baker, it had a good faith right to investigate and to request from her some documentation substantiating the severity of her injuries before tendering its policy limits.  Cited in

7

support of this argument is <u>Aboy v. State Farm Mut. Auto. Ins. Co.</u>, No. 09-cv-21400-CIV, 2010 WL 727967 (S.D. Fla. 2010) and <u>Noonan v. Vermont Mut. Ins. Co.</u>, 761 F. Supp. 2d 1330 (M.D. Fla. 2010).  In each of those cases summary judgment was entered in favor of the insurance company negating claims of bad faith asserted by the injured party.  In both instances, however, the degree of seriousness of the injuries sustained in relation to the policy limits involved made it reasonable for the insurance companies to undertake investigation and seek additional information before initiating settlement discussions.

In this case, given the minimal coverage of $10,000.00 as compared to the known injuries suffered by Tina Baker, coupled with her retention of a lawyer to press her claim and the time that elapsed from the date of the accident to the tender of the policy limits, there is a genuine issue of fact as to whether, on the basis of the totality of the circumstances, Markel American acted in bad faith.

Accordingly, the Court would deny Markel American's motion for summary judgment if this case should remain pending for decision.

B.     <u>The Motion of the Defendants</u>.  Ordinarily, the terms of a <u>Cunningham</u> agreement would have no bearing upon the issue to be tried in a collateral action for declaratory judgment concerning the bad faith issue.  Indeed, there  seems to be an express provision, common in such an agreement, that its terms will not be made

known in the bad faith case that the agreement contemplates will be filed.  The Cunningham agreement in this case contains just such a provision.[5]

Nevertheless, counsel for the Defendants predicate their motion for summary judgment (Doc. 60) almost entirely upon the wording of the Cunningham agreement, a copy of which they have filed (Doc. 16-2).  Specifically, they contend that the agreement in this instance does not provide for the customary trial of the ultimate issue of the insurance company's bad faith in settling (or not settling) Tina Baker's claim.  Rather, they say, the agreement repeatedly refers to the narrower question of whether Markel American has "breached [or violated] one or more of its duties of good faith owed to the Fluggas. . . ."[6]  And in their brief in support of their motion for summary judgment (Doc. 60, pages 18-19) they posit no less than ten distinct duties of the insurance company as gleaned from the various Florida cases discussing bad faith claims, the violation of any one of which – according to Defendants – would trigger Markel American's liability for the judgment authorized by the agreement.[7]  As

---

[5]     Paragraph 10 of the Cunningham agreement in this case (Doc. 16-2) provides:

> This agreement, the protection provided to the FLUGGAS, and any correspondence and communications surrounding its negotiation are stipulated to be irrelevant to any issues in the Declaratory Judgment Action, and therefore shall not be admissible in evidence nor referred to in the presence of the jury, by any party, witness or counsel, nor shall they be relied upon by any expert in the formation or expression of his opinion at trial. . . .

[6]     See Whereas clauses three and four, and paragraphs 3, 4 and 5 of the Cunningham agreement (Doc. 16-2).

[7]     The ten duties identified by the Defendant would require that the insurer must: (1) advise the insured concerning any settlement offers; (2) advise the insured concerning the

the Defendants see the case, therefore, the jury would be asked to decide whether Markel American breached or violated any one of those enumerated duties, and a positive verdict with respect to any one of them would be dispositive of the case.  No finding of bad faith (or causation) would be required.

As Markel American points out, this is not the first time that Tina Baker's counsel has taken the position they argue here with respect to the scope of a Cunningham agreement.  In Perrien v. Nationwide Mut. Fire Ins. Co., No. 8:08-cv-2586-T-30TGW, 2010 WL 2921621 (M.D. Fla. 2010), in which Baker's present counsel was also counsel of record, the Cunningham agreement provided that the insurance company would be liable if, in the declaratory judgment action, the court should find that it committed "bad faith or breached its duties. . ." (Id. At *4, emphasis in original.)  Counsel seized upon that language to argue, as they do now in this case, that a finding of a breach of any duty by the insurer to its insured would trigger entry of judgment without necessity of a finding of bad faith or a finding of any causal relationship between the breach of duty and the excess judgment.  My  colleague, Judge Moody, rejected that position, saying that "[t]here is no Florida authority

---

probable outcome of the litigation; (3) warn the insured of the possibility of an excess judgment; (4) advise the insured of any steps that might be taken to avoid an excess judgment; (5) undertake an investigation of the claim; (6) evaluate the claims; (7) give fair consideration to any offer of settlement; (8) settle the claim if reasonably possible; (9) initiate settlement negotiations; and (10) make decisions giving equal consideration to the interests of the insured. See Boston Old Colony Ins. Co. v. Gutierrez, 386 So. 2d 783 (Fla. 1980); Gutierrez v. Yochim, 23 So. 3d 1221 (Fla. Dist. Ct. App. 2009); Snowden, 358 F. Supp. 2d 1125; and Self v. Allstate Ins. Co., 345 F. Supp.191 (M.D. Fla. 1972).

suggesting that such an agreement would permit an entry of judgment against an insurer for its breach of a single duty, no matter how insignificant." Id. at * 5.

To be sure, in rejecting the argument made by counsel for the injured claimant in Perrien, Judge Moody relied in part upon other references in the Cunningham agreement to the "bad faith issue" and the "bad faith action," and it is obvious that counsel learned from and relied upon that adverse experience in the drafting of a revised form of the Cunningham agreement in this case, eliminating those terms. Here, the Cunningham agreement never once uses the words "bad faith," referring instead, as the Defendants emphatically point out, to a violation or breach by Markel American of "one or more duties of good faith."

The attempt by counsel to overcome the failed effort in Perrien must nevertheless fail again for several reasons insofar as summary judgment is concerned.

First of all, the agreement expressly declares that it is entered into as a Cunningham agreement, citing specifically to the Florida Supreme Court's Cunningham decision. (Doc. 16-2, page 2). But as pointed out by Judge Moody in Perrien, there is no Florida authority approving as a "Cunningham agreement" any stipulation that contemplates resolution of anything other than a bad faith claim to be decided on the basis of the totality of the circumstances. 2010 WL 2921621 at * 5. Thus, if interpreted and applied as now urged by the Defendants it would not be a Cunningham agreement at all, and under Florida law that determination could affect the jurisdiction of this Court to entertain the action. Indeed, the Defendants

11

themselves explicitly recognize the presence of this possible jurisdictional problem

although they state it, erroneously, in a reverse manner:

> If the Court determines the issue to be decided is whether
> Markel American Insurance Company is liable to the
> Fluggas for damages because it acted in bad faith under
> the totality of the circumstances, then the parties need the
> Court to decide whether it has subject-matter jurisdiction to
> decide that issue in the absence of a judgment against its
> insureds, the Fluggas.

Doc. 104, p. 6, ¶ 12b.

On the contrary, it is the <u>Defendants</u>' interpretation of the agreement that would

take it out of the mainstream of approved <u>Cunningham</u> agreements; and if the

agreement does not fit the <u>Cunningham</u> mold, the general Florida rule might apply so

that entry of an excess judgment against the insured would be a jurisdictional

prerequisite to the filing of this action.  In sum, if the <u>Cunningham</u> agreement in this

instance means what the Defendants say it means, then it could arguably fail in its

inception because the declaratory judgment action might not be maintained due to the

jurisdictional impediment.

It is also significant that the <u>Cunningham</u> agreement refers to this case by its

docket number (see Doc. 16-2, paragraph 3, pages 2-3) manifesting an

acknowledgment by the Parties that this case had already been filed at the time the

agreement was last signed by the several Parties and then approved by separate

order of the state court.  To be sure, the reference to this case in the <u>Cunningham</u>

agreement states that the parties will "seek a judicial determination of whether [Markel

American] has breached one or more duties of good faith to its insureds. . . ."

However, the petition already on file in this Court at the time the purported Cunningham agreement was signed and approved, contained the following allegations (Doc. 1, paragraphs 25 and 26):

> 25.    MAIC seeks a declaration establishing that it did not commit bad faith or breach any duty it owed to the Respondents in connection with the handling of the claim.
>
> 26.    There exists a bona fide actual present and practical need for the declaration concerning whether MAIC committed bad faith or breached its duties to Respondents in the handling of the claim and a determination of those facts will control whether or not MAIC is obligated to pay an amount over its policy limits in the event Baker obtains an excess judgment against Mark and Robert Flugga.

(Emphasis supplied)

Clearly, therefore, at the time of the signing of the Cunningham agreement and the contemporaneous filing of the petition in this Court, there appears to have been no meeting of the minds with respect to the issue to be decided in this declaratory judgment action.  Moreover, there is considerable force in the argument of Markel American that it would be "ridiculous" (Doc. 72, page 3) for it to enter into any agreement that effectively waived its right to a bad faith determination on the basis of the totality of the circumstances, and agree instead to the entry of judgment "for its breach of a single duty, no matter how insignificant."  Perrien, supra, at *5.

The Court has determined, for the reasons that follow, that interpretation of the intent and meaning of the Cunningham agreement in this case should best be left to the state court; and, for that reason, ruling will be withheld on the Defendants' motion for summary judgment.

## IV.   Entry of Declaratory Judgment

What began as an ordinary bad faith suit as alleged in the amended petition (Doc. 3) has evolved into an entirely different case.   The Defendants, by their arguments in support of their motion for summary judgment, have shifted the entire focus of the litigation to the meaning of the Cunningham agreement.   Yet neither party has invoked the Declaratory Judgment Act in any claim or counterclaim seeking declaratory relief concerning the respective rights and obligations of the parties under that agreement.   And if such relief was sought, the Court would be inclined to summarily dismiss the claim of its own motion, deferring to the state court to resolve that issue.   The mutated Cunningham agreement was entered into as part of an action pending in state court, was expressly approved by order of the state court, and was filed in an action that is still pending in state court.   Moreover, interpretation and application of the agreement could have important and far reaching precedential consequences as a matter of state law.   Notions of comity, common sense and the spirit though not the letter of the anti-injunction statute, 28 U.S.C. § 2283,[8] and the Rooker-Feldman doctrine,[9] would dictate that this Court should exercise its discretion and decline to entertain the suit if such discretion exists – and it does.   The Supreme

---

[8]      The anti-Injunction Statute, 28 U.S.C. § 2283, provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court" except in circumstances not present here.   A declaratory decree is often accompanied by an injunction, and it is conceivable that such relief in this case, if granted, could run afoul of the statute.

[9]      Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S. Ct. 149 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303 (1983).

Court has twice declared that the Declaratory Judgment Act creates discretionary, not obligatory jurisdiction. Brillhart v. Excess Ins. Co. of America, 316 U. S. 491, 62 S. Ct. 1173 (1942), and Wilton v. Seven Falls Co., 515 U.S. 277, 115 S. Ct. 2137 (1995). And the Eleventh Circuit has specifically enumerated nine factors to be considered by the district courts in deciding how such discretion should be employed. See Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1331-1332 (11th Cir. 2005):

Factor Number One is the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts. As already mentioned, construction or interpretation and application of the form of Cunningham agreement in this case could have far reaching implications in the way bad faith cases are conducted in the state courts including the possibility that the ultimate resolution of the issue presented could affect the very jurisdiction of the court to entertain declaratory judgment actions in advance of the entry of judgment in an underlying action against the insured. The state's interest in resolving the issue, and deciding the consequential effect of that resolution, could not be stronger. This factor weighs heavily in favor of dismissal.

Factor Number Two is whether the judgment in the federal declaratory action would settle the controversy. If this factor contemplates the question whether all interested parties are joined in the action, the answer would seem to be yes. If, on the other hand, the inquiry is whether a judgment here would settle the issue as a matter of precedent or resolve with finality the controversy between the present parties, the answer is no on both counts. Only the courts of Florida can establish and

declare the law of the State; and with respect to the immediate controversy between these parties, if this Court should rule in favor of the Defendants adopting their interpretation of the agreement, Markel American could still apply to the state court for reformation of the agreement based on mistake.  Interestingly, in <u>Cunningham</u> itself the Supreme Court of Florida observed that "[s]uch stipulations [now known as <u>Cunningham</u> agreements] should be enforced if entered into with good faith and not obtained by fraud, misrepresentation, or mistake . . . ."  610 So.2d at 182.  Also, it is a general rule in Florida law that an action may be brought in equity for reformation of a contract based on unilateral mistake on one side of the transaction and inequitable conduct on the other.  <u>Ayers v. Thompson</u>, 536 So. 2d 1151 (Fla. Dist. Ct. App. 1988).[10]  This factor weighs in favor of dismissal.

Factor Number Three is whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue.  In its present state, with the Parties in disagreement with respect to the issue to be resolved in the declaratory judgment action, the answer has to be no.  It should also be noted that there is no federal interest involved in this case.  This factor weighs in favor of dismissal.

---

[10]     From the arguments made in this case it is apparent that Markel American would claim at least a unilateral mistake in entering into the <u>Cunningham</u> agreement if it is construed and applied as the Defendants now contend.  Whether there was inequitable conduct in the negotiation and preparation of the agreement is, of course, unknown.  The Court is troubled, however, by the nature of the communications – or lack of communications – between the parties leading up to the filing of the negligence action.  One could infer that Baker's counsel was playing a game of "gotcha" in an effort to set up a bad faith claim.  <u>See</u> <u>Noonan</u>, <u>supra</u>, 761 F. Supp. 2d at 1336.  <u>See also</u> Justice Well's dissent in <u>Berges v. Infinity Ins. Co.</u>, 896 So. 2d 665, 685 (Fla. 2004).  Such tactics may not be sanctionable, but they may well be inequitable and, in any event, they do not represent the way the law ought to be practiced.

Factor Number Four is whether the declaratory remedy is being used in a race to judgment or to obtain a federal hearing in a case not otherwise removable.  This factor does not apply.

Factor Number Five is whether the declaratory action would increase the friction between our federal and state courts and encroach on state jurisdiction.  Because this case has transformed from a bad faith issue into a dispute involving the meaning of an agreement made in and approved by the state court, the answer is yes.  This factor weighs in favor of dismissal.

Factor Number Six is whether there is an alternative remedy that is better or more effective.  The answer is yes.  The underlying case is still pending in state court and the state court is in the best position to construe the agreement, entertain and resolve any claim for reformation (if one is made), and to settle doubtful questions of state law arising out of the present dispute.  This factor weighs heavily in favor of dismissal.

Factor Number Seven is whether the underlying factual issues are important to an informed resolution of the case.  The answer is yes as it relates to the interpretation and/or enforcement of the Cunningham agreement; and Factor Number Eight is whether the state trial court is in a better position to evaluate those issues.  Again the answer is yes for all of the reasons previously stated.  These factors weigh in favor of dismissal.

Factor Number Nine is whether there is a close nexus between the underlying factual and legal issues and state law, or whether federal statutory or common law

dictates a resolution of the declaratory judgment action.  This dispute, in all of its aspects, involves state law and only state law.  No federal law and no federal interest is involved.  This factor weighs heavily in favor of dismissal.

In sum, all of the Roach factors having any application to this case either favor or strongly favor a dismissal of this action without prejudice so that the Parties may return to state court for an interpretation of their respective rights and obligations under their Cunningham agreement that was made in state court, was approved by the state court, was filed in an action that is still pending there, and may be the subject of a petition for reformation or other relief.

## V.  Conclusion

It is the intention of the Court to withhold ruling upon the pending motions for summary judgment and to exercise its discretion under the Declaratory Judgment Act to dismiss this action without prejudice for the reasons stated in this Memorandum Opinion.  The Court recognizes, however, that the parties have not had an opportunity to be heard with respect to that possible disposition of the case.  Accordingly, an order of dismissal will also be withheld and the parties are directed to Show Cause, if any, by written responses to be filed within twenty (20) days from the date of this Order, why this action should not be dismissed without prejudice.  The Court will then take appropriate action without further notice.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida, this 13th day of March, 2013.

_____

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
              Maurya McSheehy, Courtroom Deputy